[Crim. No. 11379. Third Dist. Jan. 27, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
OSCAR T. JONES, Defendant and Appellant.

**COUNSEL**

Stacy R. Bogh, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Paul V. Bishop and Thomas R. Yanger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SPARKS, J.**—The question presented in this appeal is whether a probationer can be sentenced to prison upon revocation for a longer term than agreed upon at the time of his negotiated guilty plea. We conclude that such an increased sentence does not violate the plea bargain. Consequently, we affirm.

Following his negotiated plea of guilty to receiving stolen property (Pen. Code, § 496), defendant was granted probation. Upon revocation of that probation, he was sentenced to state prison for the upper term of three years. Contending that the sentence violated the terms of his plea bargain, defendant appeals. (Pen. Code, § 1237, subd. 1; *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 8 [136 Cal.Rptr. 409, 559 P.2d 1028].)

I

In April 1979 defendant entered a plea of guilty before the municipal court to a felony complaint charging receiving stolen property (Pen. Code, § 496). The following dialogue occurred between the magistrate, counsel and the defendant:

"MR. SIMMONS [PROSECUTOR]: Your Honor, pursuant to plea negotiations with the District Attorney's office Mr. Jones at this time desires to change his plea to Count Two of Complaint 44977F to a plea of guilty to violation of Penal Code Section 496 as alleged in Count Two with a promise from the District Attorney that so far as the sentence is concerned he would recommend the mid term which is two years, with the further understanding that the District Attorney is prepared to dismiss Count One of Complaint 44977F, dismiss the violation of probation allegation, that's Complaint 36678F and further dismiss the charges against Mr. Jones in Complaint 44498F.

"MR. ROSE [DEFENSE COUNSEL]: That is the understanding.

"MAGISTRATE: And you are willing to accept that?

"MR. ROSE: Yes, your Honor.

"MAGISTRATE: Mr. Jones, do you understand the statement of the two lawyers?

"DEFENDANT: Yup.

"MAGISTRATE: Mr. Jones, they state you intend to enter a plea of guilty to violation of Section 496 of the Penal Code as a felony and that carries a possible penalty of sixteen months, two years or three years in the state penitentiary. Do you understand that?

"DEFENDANT: Yes.

"MAGISTRATE: In this case the District Attorney is going to recommend the mid term. That will not bind the Court. It will be up to the Court to decide. I will not pass judgment and sentence in this case. It will be submitted to the Superior Court Department Two. The judge sitting in that court will, have the ultimate responsibility of passing judgment and sentence after reading the probation report. You understand that?

"DEFENDANT: Yes.

"MAGISTRATE: And that will not bind the judge other than as to the dismissal of these other cases he could sentence you to three years. Do you understand that?

"DEFENDANT: I don't quite understand that, your Honor.

"MAGISTRATE: Well, the District Attorney's recommendation is not binding on the Court. Do you understand that?

"DEFENDANT: Well, I better think about this a little while.

"MAGISTRATE: Mr. Rose, unless you gentlemen wish to enter the plea with the understanding that if the Court doesn't accept it it will be returned and everything will be reinstated.

"MR. SIMMONS: Would you agree to that, Mr. Rose?

"MR. ROSE: I have no objection to that.

"DEFENDANT: Okay.

"MAGISTRATE: All right. If the Court refuses to give you the two year term you will be returned back here and be permitted to withdraw your plea and your rights would be reinstated. Do you understand that?

"DEFENDANT: Yes.

"MAGISTRATE: Do you have any further questions concerning the possible punishment involved?

"DEFENDANT: No, I don't."

At the conclusion of the arraignment for entry of the negotiated guilty plea, the following further dialogue occurred between the magistrate and defendant:

"MAGISTRATE: And so the record is clear this is made upon the express condition that you will be sentenced to two years in the state penitentiary?

"DEFENDANT: Right.

"MAGISTRATE: Should the Superior Court refuse to accept that condition then of course you will be allowed to withdraw this plea. It will be returned to this Court and you will be allowed to withdraw the plea and it could never be used in evidence against you and all your rights will be reinstated. Do you understand that?

"DEFENDANT: Right."

The magistrate, reciting that the "plea was entered into in open court upon the express condition that the defendant shall not be sentenced to state prison for a term in excess of two years," accepted the plea and certified defendant to the superior court. (Pen. Code, § 859a.)

The superior court accepted the plea and referred defendant to the Department of Corrections for a diagnostic evaluation. (Pen. Code, § 1203.03.) In August 1979 the superior court granted defendant probation for four years upon the condition he serve one year in the county jail.

In March 1981 defendant was adjudged to be in violation of probation. Probation was terminated and defendant was sentenced to three years in the state prison upon the recommendation of the probation department that he receive the upper term.

## II

"Since 1957 California has provided by statute for a limited form of plea bargain; Penal Code section 1192.3 permitted a defendant who pled guilty to specify the punishment to the same extent that it could be specified by a jury, and provided that if the specification received the concurrence of the prosecution and the court, the punishment could not exceed that designated. In 1970 the Legislature greatly expanded this

statutory form of plea bargain by enacting section 1192.5, which permits the defendant to state the punishment to the extent it may be fixed by the court, and to specify the exercise of the court's power to grant probation or suspend sentence." (*People* v. *West* (1970) 3 Cal.3d 595, 607 [91 Cal.Rptr. 385, 477 P.2d 409], fns. omitted.)

Penal Code section 1192.5 provides, in relevant part, that "[u]pon a plea of guilty ... to an accusatory pleading charging a felony, ... the plea may specify the punishment to the same extent as it may be ... fixed by the court on a plea of guilty ... and may specify the exercise by the court thereafter of other powers legally available to it. [¶] Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on such plea to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea."

In *People* v. *Turner* (1975) 44 Cal.App.3d 753 [118 Cal.Rptr. 924], the Court of Appeal for the Fourth District, Division One, held that a probationer who bargained for county jail time could be sentenced to state prison upon revocation of probation. Rejecting defendant's contention that the trial court violated the plea bargain by imposing a state prison commitment, the court explained: "Here Turner pled guilty to a charge of burglary; he bargained for local time; he received probation. Probation was a more, not less, lenient sentence than Turner bargained for. There was nothing in this plea providing for what would happen if probation were violated. Needless to say, such a bargain would be difficult to negotiate since neither party would know in advance what the violation of probation might be. Here, after the violation occurred, there was no plea bargain involved because the bargain contemplated the initial sentencing proceeding only. It was within the discretion of the trial court to look at the situation anew ...." (*Id.*, at p. 757.)

This limitation of the proscription of Penal Code section 1192.5 against more severe punishment was correctly explained in *People* v. *Allen* (1975) 46 Cal.App.3d 583, 590 [120 Cal.Rptr. 127]: "A court is prohibited from giving a defendant a sentence more severe than that bargained for (Pen. Code, § 1192.5; *People* v. *West, supra*, 3 Cal.3d at pp. 607-608); on the other hand, having granted probation, the court can immediately revoke it on any ground stated in Penal Code section 1203.2, subdivision (a). (*People* v. *Ramos*, 26 Cal.App.3d 108, 111 [102 Cal.Rptr. 502].) If defendant violated probation, he could be sen-

tenced accordingly (Pen. Code, § 1203.1, 1203.2, 1203.3; *People* v. *Ruelas*, 30 Cal.App.3d 71, 74 [106 Cal.Rptr. 132]; see *People* v. *Hayko*, 7 Cal.App.3d 604, 610 [86 Cal.Rptr. 726]) notwithstanding the terms of any plea bargain. Thus despite *West*, post-judgment modification of probation can make the ultimate disposition of the case more onerous to defendant than originally bargained for." (Fns. omitted.)

Recently the Court of Appeal for the Fourth District, Division One, had occasion to reexamine its earlier decision in the *Turner* case. In a divided opinion, that court held in *People* v. *Alkire* (1981) 122 Cal. App.3d 119 [175 Cal.Rptr. 819], that a probationer could not be sentenced upon revocation of probation to a more severe term than that originally bargained for.

The facts in *Alkire* are substantially the same as in the instant case. Defendant Alkire pled guilty to felonious assault (Pen. Code, § 245, subd. (a)). The plea was predicated on the court's promise that should "further custody" be imposed, the term would not exceed two years. Alkire was granted probation. Thereafter, he violated probation; probation was revoked and he was sentenced to state prison for a three-year term. On appeal, the court reversed the conviction holding that the three-year term violated Alkire's plea bargain. (*People* v. *Alkire, supra*, 122 Cal. App.3d at p. 121.)

The court premised its holding upon Penal Code section 1203.2, subdivision (c), which states: "Upon any revocation and termination of probation the court may, if the *sentence* has been suspended, pronounce judgment for any time *within the longest period for which the person might have been sentenced*. However, if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke such suspension and order that the judgment shall be in full force and effect. In either case, the person shall be delivered over to the proper officer to serve his sentence, less any credits herein provided for." (Italics in original.)

Because "the longest period for which the person might have been sentenced" was asserted to be susceptible of two possible interpretations, namely, the maximum period prescribed by law for the offense or the maximum period agreed upon pursuant to the plea bargain, the court in *Alkire* chose the latter applying the familiar rule that "'[w]here the statute is susceptible of two reasonable constructions . . . a defendant is ordinarily entitled to that construction most favorable to

him.' [Citations.]" (*People* v. *Alkire, supra*, 122 Cal.App.3d at p. 121, quoting *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 488 [134 Cal.Rptr. 630, 556 P.2d 1081].)

The court in *Alkire* found additional support for its holding in rule 435(b)(1) of the California Rules of Court which states: "(b) Upon revocation and termination of probation pursuant to section 1203.2, when the sentencing judge determines that the defendant shall be committed to prison: [¶] (1) If the imposition of sentence was previously suspended .... [¶] *The length of the sentence shall be based on circumstances existing at the time probation was granted*, and subsequent events may not be considered in selecting the base term nor in deciding whether to strike or specifically not order the additional punishment for enhancements charged and found." (Italics added.)

Thus, the court in *Alkire* continued, the plea bargain constituted the only relevant circumstance existing when probation was granted and necessarily limited any subsequent imposition of punishment upon revocation of probation. (*People* v. *Alkire, supra*, 122 Cal.App.3d at p. 122.)

The *Alkire* court did not, however, overrule its earlier *Turner* decision. Instead, it purported to distinguish that decision thusly: "In *Turner* the defendant was not promised any specific limitation on the length of his incarceration, only that he would do his time, if any, locally. After violating probation by pulling an armed robbery, he was sentenced to prison. Before entering his bargained plea, the court expressly advised he faced a maximum sentence of one to fifteen years in state prison. At sentencing Turner was asked if he accepted each term of his probation, and he did so. (Alkire was never advised he had the right to object to probation, nor was he advised one of the consequences of his failing to fulfill each condition of probation could be his being sent to state prison for a term in excess of the 'promised' two years.) [¶] In *Turner* the court stressed there was nothing in the plea bargain providing for what would happen should probation be violated. Here, implicit in the judge's promise is a two-year limitation on any state prison time should it be imposed. The language would not alert anyone of a potential exposure to a longer term." (*Id.*, at pp. 124-125, fns. omitted.)

Defendant urges this court to adopt the reasoning of the *Alkire* decision. The People argue *Alkire* is factually distinguishable from the instant case. The court in *Alkire* placed great emphasis on the trial

court's phrasing of the plea bargain in terms of "further custody," interpreting the phrase as an express recognition by the trial court that the two-year limitation would be binding in *any* future proceeding, including probation revocation proceedings. Since the plea bargain here did not expressly refer to "further custody," the People contend that *Alkire* is not controlling.

We agree with the dissent in *Alkire* that when the phrase is placed in proper context, the majority's interpretation is untenable. The following colloquy between defendant Alkire and the trial court illuminates the issue:

"'THE COURT: Now, on the back here on paragraph 12 it says, "Defendant to change his plea to Penal Code section 245(A), count one. People to dismiss all remaining counts and allegations. Defendant to be examined by appropriate body pursuant to Penal Code section 1203.03. Judge promises that should further custody be imposed in—"

"'MR. SMITH [defense counsel]: Does it say no more than two years?

"'THE COURT: "No greater than two years." "A term no greater than two years, the mitigating term shall be imposed. Defendant to make full restitution to victim for medical costs."

"'Do you understand all that?

"'DEFENDANT ALKIRE: Yes, sir.'" (*People* v. *Alkire, supra*, 122 Cal. App.3d at pp. 126-127; Cologne, J., dis. opn.)

It is clear, as the dissent in *Alkire* notes, that the phrase "further custody" referred to custody following the commitment for diagnostic evaluation ordered by the trial court pursuant to Penal Code section 1203.03. The plea bargain, by its own terms, was silent on the issue of sentencing following probation revocation. It is therefore not distinguishable from the bargain struck here.

Since we conclude that *Alkire* is not factually distinguishable, we next consider whether it is persuasive. Because we further conclude that the majority in *Alkire* has misconstrued Penal Code section 1203.2, subdivision (c), we find it unpersuasive. We therefore decline defendant's invitation to follow it and instead elect to follow *Turner*.

In our view, Justice Cologne, in his dissent in *Alkire*, conclusively refuted the majority's interpretative analysis: "In connection with certain other points made by the majority, I cannot agree there is ambiguity in the language of Penal Code section 1203.2, subdivision (c), permitting application of a most favorable construction for defendants. The phrase allowing judgment upon probation revocation for the 'longest period for which the person [or defendant] might have been sentenced' has been in the codified law since 1903 (see Pen. Code, § 1203, as amended by Stats. 1903, ch. 34). I am convinced the quoted phrase neither had nor has any possible reference to a plea bargained sentence inasmuch as plea bargaining was not even officially recognized until 1970 (see *People* v. *Collins* (1978) 21 Cal.3d 208, 215 [145 Cal.Rptr. 686, 577 P.2d 1026]; *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409]; Pen. Code, § 1192.5, as added by Stats. 1970, ch. 1123).[4]" Footnote 4 of the dissent reads: "Similarly, I cannot accept the majority's inclusion of the plea bargained sentence within the meaning of the word 'circumstances' in rule 435(b)(1). 'Circumstances,' as used in the sentencing rules, refers to the crime or the defendant, not the plea bargained sentence (see Cal. Rules of Court, rules 419(a)(2) and (4); 421(a) and (b); 423(a) and (b))." (*Id.*, 122 Cal.App.3d at p. 129.)

■ In our opinion, the sentencing court complies with the statutory restrictions of Penal Code section 1192.5 when it initially selects a punishment compatible with the plea bargain. "[T]o the extent that the analogy of a plea bargain to a contract with the court is apt, the court [thereby] fulfill[s] its responsibilities." (*People* v. *Allen, supra*, 46 Cal.App.3d at p. 590.)

Judge DeCristoforo, one of the arraigning judges, perceptively noted that "it does not seem to me to be correct that the original limitation shall then be a perpetual all-time license to the defendant to engage in criminal activity thereafter, or otherwise violate his probation." Neither does it to us. A consummated plea bargain does not insulate a defendant from the consequences of his future misconduct. A defendant gets the benefit of his bargain only once. Like time, a plea bargain once spent is gone forever.

### III

■ Defendant further contends that the selection of the upper term of imprisonment was not based upon circumstances existing at the time probation was originally granted. As we have noted, rule 435(b)(1) of

the California Rules of Court provides that upon revocation of probation, the "... length of the sentence shall be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term ...."

The record belies the contention. The trial court imposed the upper term for the following stated reasons: "Defendant in this original offense incurred with the co-defendant, participated in the offense by attempting to cash one of the stolen checks. Defendant was in possession of a stolen check protector and checks which he then intended to use improperly. [¶] The defendant has prior convictions from· the Department ...."

Both of these circumstances existed at the time probation was originally granted in August 1979 and both constituted circumstances in aggravation justifying the imposition of the upper term. (Cal. Rules of Court, rules 421(a)(8) and (b)(3).)

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1982. Richardson, J., Kaus, J., and Reynoso, J., were of the opinion that the petition should be granted.